1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LEROY STOTTS,                              No. CIV S-08-1178-MCE-CMK-P

12                  Petitioner,

13        vs.                                   FINDINGS AND RECOMMENDATIONS

14   D.K. SISTO, et al.,

15                  Respondents.

16   _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254, challenging a decision by the California Board of

19   Prison Hearings (Board) that he is unsuitable for parole.  Pending before the court is

20   Respondents' motion to dismiss the petition on the grounds that it is barred by the statute of

21   limitations (Doc. 12).  Petitioner filed an opposition[1] to the motion (Doc. 18), and Respondents

22   filed a reply (Doc. 19).   On May 28, 2009, the court issued an order providing Petitioner with an

23

24          [1]       Petitioner's opposition was filed late.  Respondents' motion was filed on
     December 5, 2008.  After being granted additional time to file his response, Petitioner's
     opposition was due on or before March 20, 2009.  However, Petitioner did not file his response
25   until April 15, 2009.  In addition, Petitioner's opposition was not signed, but was presumably
     given to prison officials to mail, on or about April 10, 2009, rendering it late by 22 days.
26   Regardless, the court has read and considered Petitioner's late opposition.

1  opportunity to submit additional briefing.  Petitioner had 30 days in which to respond.  More than

2  30 days have past, and no response to that order has been received.[2]

3        **I.    BACKGROUND**

4        Petitioner was convicted in the Superior Court of Solano County of first degree

5  murder in 1987, and was sentenced to 27 years to life.  (Pet., Doc. 1, at 1).  A subsequent parole

6  consideration hearing for petitioner was held on June 10, 2005.  At that hearing, the Board

7  determined petitioner was not suitable for parole, and denied parole for five years.  (See Motion,

8  Ex. 1, Doc. 12-2, at 82).  The Board's decision was rendered at the time of the hearing on

9  June 10, 2005, but states it was not final until October 8, 2005.  (Id.)  Petitioner filed a petition

10  with the Solano County Superior Court on February 26, 2006, which was denied on April 26,

11  2006.  He then filed a petition with the California Court of Appeal on July 3, 2006, which was

12  denied on August 31, 2006.  His final state petition was filed with the California Supreme Court

13  on November 20, 2006, which was denied on May 23, 2007.  Petitioner filed the instant action on

14  May 29, 2008.[3]

15        **II.  MOTION TO DISMISS**

16        Rule 4 of the Rules Governing Section 2254 Cases allows a district court to

17  dismiss a petition if it "plainly appears from the petition and any attached exhibits that the

18  ─────────────────────

19      [2]    The May 28, 2009, order was returned to the court as undeliverable, stating the inmate was not at Avenal State Prison (ASP).  The address the court had for Petitioner was

20  California State Prison - Solano (CSP-Solano), not ASP.  The court then resent the order to Petitioner on June 29, 2009, at CSP-Solano.  The order was returned to the court again as unable

21  to forward.  Upon further review, the court discovered Petitioner had originally provided the court with an incorrect inmate identification number.  The number he provided the court in his

22  complaint belonged to an inmate at ASP.  However, on a subsequently filed document, Petitioner provided the court with the correct inmate identification.  The court resent the order on July 10,

23  2009, to Petitioner at CSP-Solano with his correct inmate identification number.  Allowing 30 days from the date the order was resent, Petitioner's further briefing was due on August 10, 2009.

24      [3]    The dates of filing stated above in the California state courts are based on the prison mail-box rule, and are calculated based on the date Petitioner signed the petition and

25  presumably gave it to the prison officials for mailing.  See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).  Providing Petitioner the same benefit in the instant petition would render

26  the petition deemed filed as of May 27, 2008.

1   petitioner is not entitled to relief in the district court . . . ."  Rule 4 of the Rules Governing

2   Section 2254 Cases.  The Ninth Circuit has allowed respondents to file a motion to dismiss in

3   lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being

4   in violation of the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th

5   Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

6   remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural

7   grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F. Supp.

8   1189, 1194 & n. 12 (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss

9   after the court orders a response, and the Court should use Rule 4 standards to review the motion.

10  See Hillery, 533 F. Supp. at 1194 & n.12.

11          Respondent brings this motion to dismiss Petitioner's federal habeas corpus

12  petition as filed beyond the one-year statute of limitations, pursuant 28 U.S.C. § 2244(d).

13  Respondent argues the statute of limitations began running following the Board's June 10, 2005,

14  decision, which expired well before the petition was filed in this case on May 29, 2008.

15  Respondent also argues Petitioner is not entitled to interval or equitable tolling because Petitioner

16  unreasonably delayed in filing his state petitions, and has not met his burden of establishing

17  diligence to be entitled to equitable tolling.

18          Petitioner argues the Board's decision was not final until October 8, 2005, and the

19  statute of limitations did not start to run until then.  He also argues he should be allowed interval

20  tolling because there was no unreasonable delay in filing his state petitions, and he should be

21  entitled to equitable tolling because he was not notified of the California Supreme Court's

22  decision denying his petition in a timely fashion.

23          A.  Statute of Limitations

24          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

25  Penalty Act of 1996 (hereinafter "AEDPA").  AEDPA imposes various requirements on all

26  petitions for writ of habeas corpus filed after the date of its enactment.  See Lindh v. Murphy,

1   521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  In this

2   case, the petition was filed on May 29, 2008, and therefore, it is subject to the provisions of

3   AEDPA.  AEDPA imposes a one-year statute of limitation on petitioners seeking to file a federal

4   petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2254(d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right was asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

17  28 U.S.C. § 2244(d).

18

19          The statute of limitations for habeas petitions challenging parole suitability

20  hearings is based on § 2244(d)(1)(D), that is, the date on which the factual predicate of the claim

21  or claims could have been discovered through the exercise of due diligence.  See Redd v.

22  McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003).  "Courts ordinarily deem the factual predicate to

23  have been discovered the day the decision becomes final, i.e., 120 days after the Board finds a

24  petitioner not suitable for parole."   Wilson v. Sisto, No. 07cv0733, 2008 WL 4218487 *2 (E.D.

25  Cal. Sept. 5, 2008) (citing Nelson v. Clark, No. 1:08cv00114, 2008 WL 2509509, at *4 (E.D.

26  Cal. June 23, 2009)); see also, Perez v. Sisto, No. 07cv0544, 2007 WL 3046006, at *4 (E.D. Cal.

4

1   Oct. 18, 2007), Cal. Code Regs., tit. 15, § 2041(h), Cal. Penal Code § 3041(b) (Board decisions

2   are final 120 days after the hearing).

3        Here, Petitioner is challenging his 2005 denial of parole.  Respondent argues that

4   the Board's decision denying Petitioner parole was rendered on June 10, 2005, and the factual

5   predicate of Petitioner's claims were known to him as of that day.  Respondent alleges Petitioner

6   filed his first state petition challenging that decision on February 26, 2006, which was denied on

7   April 26, 2006.  He then filed a petition in the California Court of Appeal on July 3, 2006, which

8   was denied on August 31, 2006.  Finally, he filed a petition in the California Supreme Court on

9   November 30, 2006, which was denied on May 23, 2007.  Petitioner filed his federal petition in

10  this court on May 27, 2008.  Based on the timing of all of these petitions, Petitioner's federal

11  petition was untimely, filed 779 days after the statute of limitations period began (260 days from

12  the date of the Board's decision to the filing of the first petition; 67 days between the denial of

13  the first state petition and the filing of the second; 90 days between the denial of the second

14  petition and the filing of the third; and 362 days between the denial of the third petition and the

15  filing of the federal petition).

16       Petitioner argues the Board's decision was not final until October 8, 2005, and the

17  statute of limitations did not start to run until that date.  Therefore, only 141 days had past

18  between the date of the final Board decision and the filing of his first state habeas petition.

19       Respondent relies on two previous opinions from this court to support his position

20  that statute begins to run on the date the Board's decision is rendered.  (See Reply, Doc. 19, at 2

21  (citing Gray v. Cramer, No. 07cv1928, 2008 WL 2788426, at *2 (E.D. Cal. July 18, 2008),

22  Knight v. Yates, No. 07cv0612, 2007 WL 2695691, at *4 (E.D. Cal. Sept. 11, 2007)).  He argues,

23  as was discussed in Gray, that the factual predicate was known to Petitioner at the hearing

24  because the Board discussed its findings with Petitioner at that time.

25       Respondents' argument is based on Findings and Recommendations issued by a

26  Magistrate Judge.  Those Findings and Recommendations were not adopted by the District

1   Judge.  The District Judge in Gray rejected the Findings and Recommendations as to the onset of

2   the statute of limitations, finding  "[t]he factual predicate for petitioner's habeas petition must be

3   the final, rather than the proposed, [Board] decision."  Gray v. Cramer, No. 07cv1928, Doc. 16,

4   at 4 (E.D. Cal. March 27, 2009).[4]  In rendering that decision, the District Judge acknowledged

5   other cases had reached a different conclusion.  However, he found the cases holding that the

6   factual predicate is considered "discovered" as of the date the Board's decision is final, not the

7   date the of proposed decision, is the better approach.  The issue of whether the factual predicate

8   is established based on a proposed or final decision was not before the court in Knight v. Yates,

9   and Respondent's reliance thereon is misplaced.

10           Accordingly, the undersigned finds that the factual predicate of a petitioner's

11   claims is considered "discovered" as of the date the Board's decision is final.  The statute of

12   limitations does not start to run until that time.  In this case, the Board's decision became final on

13   October 8, 2005.  The statute of limitations then began to run the following day, October 9, 2005.

14   Therefore, in order for Petitioner's petition to be considered timely filed, Petitioner had until

15   October 9, 2006, to file his federal petition, unless he was entitled to a period of tolling.

16           B.  Interval Tolling

17           The statute of limitations period is tolled for the time a properly filed application

18   for post-conviction relief is pending in the state court.  See 28 U.S.C. § 2244(d)(2).  To be

19   "properly filed," the application must be authorized by, and in compliance with, state law.  See

20   Artuz v. Bennett, 531 U.S. 4 (2000); see also Allen v. Siebert, 552 U.S.  3 (2007); Pace v.

21   DiGuglielmo, 544 U.S. 408 (2005) (holding that, regardless of whether there are exceptions to a

22   state's timeliness bar, time limits for filing a state post-conviction petition are filing conditions

23   and the failure to comply with those time limits precludes a finding that the state petition is

24   

25           [4]      The court may take judicial notice pursuant to Federal Rule of Evidence 201 of
    matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).
    Thus, this court may take judicial notice of its own records.  See Chandler v. U.S., 378 F.2d 906,
26   909 (9th Cir. 1967).

1   properly filed).  A state court application for post-conviction relief is "pending" during all the

2   time the petitioner is attempting, through proper use of state court procedures, to present his

3   claims.  See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  It is not, however, considered

4   "pending" after the state post-conviction process is concluded.  See Lawrence v. Florida, 127 S.

5   Ct. 1079 (2007) (holding that federal habeas petition not tolled for time during which certiorari

6   petition to the Supreme Court was pending).  Where the petitioner unreasonably delays between

7   state court applications, however, there is no tolling for that period of time.  See Carey v. Saffold,

8   536 U.S. 214 (2002).  If the state court does not explicitly deny a post-conviction application as

9   untimely, the federal court must independently determine whether there was undue delay.  See id.

10  at 226-27.

11         In California, a prisoner seeking collateral review must file a habeas petition

12  within a reasonable time.  See Id. at 222-23.  Given this indeterminate time frame, without clear

13  diction or explanation from the California Supreme Court as to the meaning of "reasonable

14  time," the district courts must "examine the delay in each case and determine what the state

15  courts would have held in respect to timeliness."  Evans v. Chavis, 546 U.S. 189, 198 (2006).  At

16  least in respect to a collateral challenge of a parole denial decision, one California court has held

17  a delay of 10 months was not unreasonable.    See In re Burdan, 86 Cal. Rptr. 3d 549, 558 (Cal.

18  App. 2008) ("We do not find a delay of 10 months for an unrepresented prison inmate to file a

19  petition for writ of habeas corpus in the Court of Appeal, after denial of a similar petition in the

20  superior court, to be unreasonable.").  In that case, the California Court of Appeal indicated that,

21  generally, where a petitioner is challenging his conviction, especially in capital cases, the

22  reasonableness standard is stricter than in those cases where a petitioner is challenging a parole

23  decision.  See id. at 557-58.  Where a petitioner is challenging a denial of parole, there are less

24  restrictions as the state is less concerned with loss of evidence, the finality of the conviction is

25  not an issue, there is no possibility of a retrial requirement so there is no prejudice to the state,

26  and the only one potentially prejudiced by a delay is the inmate who must remain in prison after

1    he might otherwise have been released on parole.  See id.

2            The issue of what constitutes an unreasonable delay in California is far from

3    certain.  In fact, the Ninth Circuit  has recently certified that question to the California Supreme

4    Court.  See  Chaffer v. Prosper, 542 F.3d 662 (9th Cir. 2008).  Until that question is answered,

5    the district courts will have to continue looking at each case individually to "determine what the

6    state courts would have held in respect to timeliness."  Chavis, 546 U.S. at 198.

7            Respondent contends Petitioner is not entitled to interval tolling between the time

8    his first petition was denied and he filed his second, nor for the time between the denial of his

9    second petition and the filing of his third.  Respondent argues that the time between the denials

10   and the filing at the next level, a time of 67 days and 90 days respectively, constitutes

11   unreasonable delay.  Respondent cites to Chavis, 546 U.S. 189, for support of his argument that

12   such delays were unreasonable.  He argues that in Chavis, the United States Supreme Court

13   concluded that an unexplained delay of six months was unreasonable, because it exceeded the

14   thirty to sixty days that most states provide for filing an appeal to the state supreme court.  He

15   then cites to a number of district court cases where the courts have found anywhere between 70

16   and 97 days to be unreasonable.

17           Petitioner argues there was no unreasonable delay between his state petitions

18   challenging the denial of parole.  He claims he:

19           diligently proceeded in researching, preparing and filing his state
                petitions between state courts, and the only reasonable delays were
20          due to the necessity of the petitioner utilizing the Prison Law
                Library facilities available to him, and familiarizing himself with
21          the numerous court rulings and changing legal interpretations in
                cases related to prisoners serving life sentences, and challenges to
22          decisions of both the Board of Parole Hearings and the Governor.

23   (Opposition, Doc. 18, at 5).

24           Petitioner further contends that he:

25           was subjected to a number of restricted movement procedures
                implemented by Prison Administrative Staff due to the Budget
26          Crisis and shortage of Custody Staff at the prison, which hindered

1   the petitioner in having access to the Law Library on any kind of
2   regular basis, use of a typewriter in order to prepare his legal
    documents.

3   (Id. at 6).

4        Whether a delay between filings is reasonable or not depends, in part, on whether

5   the delay has been explained.  Respondent cites to a number of cases where the courts have found

6   delays similar to the delays in this case unreasonable.  However, there are just as many cases

7   where the courts have found similar delays, and even longer delays, to be reasonable provided

8   there was some explanation for the delay.  See Winston v. Sisto, No. 07cv2284, 2008 WL

9   2119918, at *9 & n.5 (E.D. Cal. May 20, 2008) (compiling cases discussing reasonable and

10  unreasonable delays).

11       Here, petitioner suggests his delay was caused by what could be described as

12  normal prison life.  However, his reasons, including the need to research and delays in obtaining

13  access to the law library, which he claims were due to prison staff shortages, may be considered a

14  reasonable explanation for the relatively short delays experienced in this case.  Assuming the

15  delays were not unreasonable, and petitioner would be eligible for interval tolling for the period

16  of time he was actively pursuing his remedies in the state courts, petitioner would still have

17  missed the statute of limitations in his petition absent the granting of equitable tolling.  As

18  discussed above, the Board's decision denying him parole was final on October 8, 2005.  He did

19  not file his first state petition until February 26, 2006.  He therefore used 141 of his 365 days

20  under § 2244(d).  His final state petition was denied May 23, 2007.  He then filed his federal

21  petition on May 27, 2008,[5] which was 370 days later.  Thus, he was 145 days late in filing his

22  federal petition.  Accordingly, even assuming petitioner's delays in filing his second and third

23  state petitions were not unreasonable, the only way for petitioner's current petition to be

24  considered timely is if he qualifies for equitable tolling.

25
        [5]      As discussed above, this date provides Petitioner the benefit of the mailbox rule.
26  See Stillman, 319 F.3d at 1201.

                                          9

C.  Equitable Tolling

Because the statute of limitations under AEDPA is not jurisdictional, it is subject to traditional equitable tolling principles.  See Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).   To be entitled to equitable tolling, the petitioner bears the burden to demonstrate that: (1) he has been diligent in pursuing his rights; and (2) extraordinary circumstances prevented him from filing on time.  See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007)

In Pace, the Supreme Court held that equitable tolling was not applicable because "petitioner's lack of diligence precludes equity's operation." 544 U.S. at 419.  In Beeler, the district court granted equitable tolling and the respondent sought a writ of mandamus to reverse the district court's order.  See 128 F.3d at 1288.  In denying the respondent's mandamus petition, the Ninth Circuit addressed the district court's decision to grant equitable tolling as follows:

> Having decided that [the statute of limitations] can be tolled, we have no basis for upsetting the district court's decision to allow Beeler more time to file his petition.  The district court found that Beeler's lead counsel, Scott Braden, had diligently pursued the preparation of Beeler's petition.  Braden, however, withdrew after accepting employment in another state, and much of the work product he left behind was not usable by replacement counsel – a turn of events over which Beeler had no control.  There were thus "extraordinary circumstances" which justified tolling [the] statute of limitations.

Id. at 1289.

The Ninth Circuit has held "the threshold necessary to trigger equitable tolling under AEDPA is very high, least the exceptions swallow the rule."  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002).  "To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling."  Waldron-Ramsey v. Pacholke, 556 F.3d 1008 (9th

1 | Cir. 2009) (quoting <u>Harris v. Carter</u>, 515 F.3d 1051, 1055 (9th Cir. 2008)).

2 |         A showing that Petitioner failed to receive the California Supreme Court's denial

3 | of his petition may be sufficient to meet the second prong, as an example of extraordinary

4 | circumstances.  <u>See</u> <u>Lewis v. Mitchell</u>, 173 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001).  However,

5 | Petitioner here fails to meet the first prong, that he was diligent in pursuing his rights.  In his

6 | opposition to the motion to dismiss, Petitioner states:

7 |         when the petitioner had not received a decision and/or any other
    |         communications from the Court, the petitioner wrote the Clerk of

8 |         the Court (on at least three separate occasions), inquiring as to the
    |         status of his petition . . . but, received no response from the Clerk's

9 |         Office.

10 | (Opposition, Doc 18, at 3).  He then claims he received notice of the denial in April 2008.

11 | However, the court notes that in his petition, he addressed this same issue and indicated he

12 | received notice of the denial on February 15, 2008.  (<u>See</u> Petition, Doc. 1, at 9).

13 |         Petitioner has provided no proof of his attempts to contact the California Supreme

14 | Court regarding the status of his case.  There is no dispute that the notification regarding the

15 | Supreme Court's denial was not received by Petitioner and was returned to the Court.[6]  Both

16 | parties submit a copy of the California Supreme Court's docket listing, which indicates that on

17 | June 4, 2007, the mail addressed to Petitioner was returned, unable to forward.  However, there is

18 | no indication on that docket that the California Supreme Court ever received any requests for

19 | status Petitioner claims he submitted.  As Respondent argues, Petitioner's statements regarding

20 | these alleged requests for status are self-serving conclusory statement, which are uncorroborated

21 | by any supporting evidence.

22 |         Petitioner might have met his burden of showing due diligence by providing the

23 | court with a copy of the letters he claims he sent to the California Supreme Court, or perhaps the

24 | dates of his requests, but again he failed to do so.  His uncorroborated, self-serving, conclusory

25 |

26 |         [6]     Petitioner asserts he was housed at the prison where the California Supreme Court
    | sent the notification, and had been for 10 years, so he is unsure why it was returned to the Court.

1  statements that he wrote to the Clerk of the Court for status "on at least three separate occasions,"

2  and the inconsistency in his statements as to when he did receive notice that his petition had been

3  denied, fails to show the necessary diligence.  This was explained to Petitioner in the May 28,

4  2009, order allowing him an opportunity to submit a supplemental brief.  Petitioner was provided

5  an additional 30 days to provide the court with competent evidence of his due diligence in

6  pursuing his state court petition.  However, he failed to take advantage of the opportunity to

7  provide the court with additional information as to what steps he took to contact the California

8  Supreme Court regarding the status of his case.  As such, the undersigned can only conclude that

9  he did not attempt to contact the California Supreme Court, nor is there any evidence to suggest

10  Petitioner acted otherwise which could be considered due diligence.  While it is undisputed that

11  Petitioner did not receive notification that his final state petition had been denied at the time of

12  the denial, the undersigned cannot find Petitioner met his burden of proving he acted with due

13  diligence in pursuing his rights.

14       The undersigned finds that Petitioner is not entitled to equitable tolling for the

15  period of time between the California Supreme Court's denial of his final state petition and the

16  filing of his federal petition in this court.  Therefore, in order for his federal petition to have been

17  timely filed, Petitioner would have had to file it on or before January 2, 2008.[7]  Petitioner did not

18  file his petition until May 27, 2008.  Accordingly, his petition is untimely by 145 days.

19       **III. CONCLUSION**

20       Based on the foregoing, the undersigned recommends that respondent's motion to

21  dismiss be granted.

22  / / /

23

24       [7]   As discussed above, the Board's decision was final on October 8, 2005.  Petitioner
25  waited 141 days before filing his first state petition.  Assuming the statute of limitations was
     tolled for the entire time he was progressing through the state system, it began to run again on
26  May 24, 2007.  He then had 224 days left in which to file his federal petition, or until January 2,
     2008.

1    These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court.  The document should be captioned "Objections to Magistrate Judge's

5    Findings and Recommendations."  Failure to file objections within the specified time may waive

6    the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7

8    DATED:  August 20, 2009

9

10   CRAIG M. KELLISON
     UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26